CONCURRING OPINION. ROBERTS, C. J. — I do not believe that any duty rests upon the Governor, Secretary of State and Attorney General to seek out the mode or avenue of investment of the school fund. It was never the intention to place upon these officials this duty. Their power, as stated by Justice Parker, is simply a veto power. This being true, the power cannot be exercised in advance of its lawful re■quirement. It might be argued with as much consistency, that the governor of a state could say in advance of the legislature that he vetoed a pending bill, prior to its passage by that body. The construction sought to be placed upon the Constitution and enabling act by the Governor, Secretary of State and Attorney General would strip the Treasurer of ■all discretipn in the matter of investing the school fund ■•and relieve him from all responsibility in this regard, casting this duty upon three men, no one of whom is required by law to execute a bond for the faithful performance of his duties in this respect. Such I do not believe was ever the intention of Congress or the constitutional convention. In the enabling act we find this language: “The State Treasurer shall keep all such moneys inwested in safe interest-bearing securities, which securities ■shall be approved by the Governor and Secretaiw of State of said proposed State, and shall at all times be under a .good and sufficient bond or bonds .conditioned for the faithful performance of his duties in regard thereto as defined by this act and the laws of the State not in conflict therewith.” Thus placing upon the State Treasurer the duty of keep ■ ing these funds invested in safe interest-bearing securities, but the securities in which the funds are invested must be approved by the Governor and Secretary of State. The constitutional convention adopted sec. 7 of art. 'XII, which reads as follows: — ■ “The principal of the Permanent School Fund shall be invested in the bonds of the State or Territory of New Mexico, or of any county, city, town, board of education •or school district therein. The legislature may by three-fourths vote of the members elected to each house provide that said funds may be invested in other interest-bearing •securities. All bonds or other securities in which any portion of the school fund shall be invested must be first approved by the Governor, Attorney General and Secretary of State. All losses from such funds, however occurring, shall be reimbursed by the State.” It will be observed that the clause quoted, does not in specific terms require the Treasurer to invest the funds, but it says the “funds shall be invested,” and in view of the-enabling act requiring the Treasurer to perform this duty, it must be presumed that the Constitution likewise requires the same duties of this official. It was the purpose-of Congress and the constitutional convention to throw every possible safeguard around this trust fund, so that it might forever remain intact for the benefit of the schools of the State. With this end in view, they placed the-duty of keeping this fund invested upon the fiscal officer of the State, supposedly because the Treasurer would be-in close touch with financial affairs, the issuance and sale-of bonds and securities by the State and its subdivisions,, and he thereby be enabled to propose the best investment for the fund, from time to time. He was, by the enabling-act, required “at all times to be under a good and sufficient-bond or bonds conditioned for the faithful performance of his duties in regard thereto.” As an additional safeguard to the fund, the enabling act provided that the securities in which the Treasurer proposed to invest the-fund should be “approved by the Governor and Secretary of State.” This provision was. carried forward in the-State Constitution, but the further approval of the Attorney Genera], the law officer of the State, was also required, as an additional safeguard. Thereby, requiring-the affirmative sanction of four separate individuals before the money could be invested; first, the proposition by the Treasurer to invest, and second, the approval of each of the officials named. But it is argued, that the Treasurer, by failing to propose any investment of the fund,, might retain the same in his hands and derive a profit therefrom. This argument is based upon the assumption-that the Treasurer would be remiss in his duties. The-law always presumes that an official will do his duty, and, it might be further said, that no Treasurer would dare assume the risk which such action would entail. If he-should be so remiss in his sworn duty, he would, of course, be liable on his bond, at the suit of the State for the interest which could have been procured by an investment of the fund, and would further be liable for all loss that might accrue to the fund. Again, it might be said, that the investment of the fund could likewise be prevented by either the Governor, Secretary of State or Attorney General, by the failure to approve of proposed investments. These officials are not required to give bond for the faithful performance of the duties imposed upon them in this regard. The securities in which the Treasurer is authorized to invest the funds are specified in the Constitution. In the named, or authorized, securities only can he propose investments. While mandamus would not lie to compel him to propose to the three named officials an investment of the fund in any particular security, it would issue to compel him to propose the investment in some of the named securities, leaving it to his discretion to propose the avenue of investment, within the limits fixed. The writ would set him in motion. High’s Extraordinary Legal Remedies, sec. 34. I do not understand by what rule of grammatical construction the word “approve” can be given the meaning of “direct.” The words are not synonymous, and the meaning is in no wise related. The word “approve” is defined by Webster to mean “to sanction officially; to ratify; to confirm; to regard as good; to commend; to think well of.” It will be seen that the word relates, for its object, to something already done, made or said by another. How could the named officials approve, unless something was proposed by the Treasurer? In the case- now under consideration the Treasurer proposed to invest the funds, by depositing them in banks, upon certificates of deposit. This was the proposition before the officials for their approval. They did not approve, consequently the Treasurer had no right to invest the funds in that manner. This was the only question before them, or that was proposed for their consideration and approval. The three officials went further, however,.and directed the Treasurer to invest the funds in the State Highway Bonds. True, it is argued that they did not “direct,” but by a process of elimination and disapproval, confined .the Treasurer to this one avenue of investment, but it amounts to the same thing as “directing,” and it would hardly be argued that these officials could do indirectly what they could not do directly. In the case of Thaw v. Ritchie, 5 Mackay 200, the Supreme Court of the District of Columbia discussed the word “approve” as used in a statute which authorized the Orphan’s Court to order a sale of real estate, but provided that the realty should not thereby be diminished without the approbation of the general court of Chancellor. The Court says:— “The action of the Orphan’s Court must precede that of the Chancellor, and it is this action which he is to approve. He is not to order or decree a sale, which would be the appropriate terms for an original proceeding before him, but is to APPROVE, which term is only appropriate to a revisory proceeding. And as the statute clearly contemplates a previous decree by the Orphan’s Court-, it must be this which is to receive his approbation,” The term “approve,” only being appropriate to a revisory proceeding, the enabling act and our Constitution therefore must have contemplated a proposed action by the State Treasurer, which would be revised by the officials named. In the case of Long v. Commissioners, 75 Ohio State 539, the Supreme Court of Ohio say “The word ‘approve’ seems to relate for its object to some thing made, done or said by another.” In the ease of Old Colony Trust Co. v. City of Atlanta, 83 Fed. 39, it was contended ,on behalf of the city, that it had the power to fix the rates of fare and freight, by reason of a provision in the ordinance which read, “provided that the rates of fare and freight upon said railroad shall be subject to the approval of the mayor and city council' of the city of Atlanta.” The power was denied, the Court bolding that the power to approve rates did not grant the-right to fix the rates originally. It seems to me that the construction contended for by the Attorney General would destroy, in the main, the purpose of the carefully worded provision in the enabling act and Constitution, and relax the safeguards which Congress and the framers of the Constitution sought to place-over the administration of this sacred fund. Our government is a government by the people, through chosen representatives. Some of the officers, it is true, are required to-execute a bond for the faithful performance of their duties, but acts, within their discretion, and within the limits of' their power to act, and not corruptly or wilfully done, are without the terms of the bond. Many officials are not required to execute any bond. All, however, are answerable-before the bar of public opinion for their stewardship. It has always been the policy of the law to require public-records to be kept of the actions and doings of public officials, so that the public might have full information, at all times, relative to such matters, and be able to judge of' the conduct and doings of their representatives. This, I judge, is largely the purpose of the carefully framed provisions relating to the investment of this fund. The State-Treasurer is required to propose to the three officials named,, an investment of the school fund in certain bonds specified. By his proposition, he goes on record as being willing to-invest this fund in the named security, at the rate of interest specified and for the price stated in his proposition. If the three men, each approve, he can proceed to make-such investment; if they disapprove, he must look further. Now, if the Treasurer should propose a poor investment for the fund, he is answerable to the people. If, on the other hand, the three officials named, or any one-of them, should refuse to approve a good investment for the fund and force the Treasurer, by elimination, to propose a poor investment, such official, or officials, would be held accountable by the people, and by them only, for they are not under bond. Suppose, for instance, that the State Treasurer should propose to pay 135 for bonds selling in the market for but par, would he not be severely criticised for so doing and never afterwards entrusted with place or power ? Or, on the other hand, suppose the State Treasurer should propose to the three officials the purchase of solvent securities, within the class named, which would pay tire fund 6% interest, and the proposition should be rejected and the Treasurer forced to invest in securities returning only 3% or 4%. For a breach of duty in either of the supposed cases, it is probable that the official would only be answerable before the bar of public opinion. It was the design, however, of the framers of the provision, that the public should have full information, and so important was it considered that the people should be able to fix the responsibility, that each official was required to assume the whole of the same. No investment could be made without being proposed by the State Treasurer, and hence he was not to be permitted to escape responsibility by shouldering it upon the other three officials. On the other hand, the proposed investment could not be made without the affirmative approval of each of the state officials named, so that no one man could say that the act was done without his concurrence. All were answerable alike to the people for the management of the fund. The construction contended for would absolutely absolve the State Treasurer from his accountability to the people for the management of the fund, and so long as he followed the directions of the three officials named, he would be held blameless. All opportunity for the people knowing-how profitable an investment might be made of the fund can be cut off at once by the Governor, Attorney General and Secretary of State, adopting a resolution, as was done in this cáse, that they will approve only the one named investment. This being true, and the Treasurer being bound thereby, how is he to present to them more advantageous sources of investment ? Again, no one of the three is under bond, and this construction relieves the only-bonded official from liability, so long as he follows the directions given him. Before mandamus .will lie, it must be determined that the investment of school moneys by the State Treasurer requires the exercise of no judgment or discretion on his part. “The only acts to which the power of the courts by mandamus extends are such as are purely ministerial and with regard to which nothing like judgment or discretion in the performance of his duties is left to the officer but that wherever the right of judgment or decision exists in him it is he and not the courts who can regulate its exercise.” Goodrich v. Guthrie, 58 U. S. 284. An added reason might be given for the above conclusion that the Governor, Secretary of State and Attorney General have not the right to direct in advance, the action of the State Treasurer relative to the investment of the school fund. The fund is by law committed to the care and custody of the Treasurer. While now, the money in his hands, is-only slightly in excess of one hundred thous- and dollars, eventually it will amount to millions. He is the only official who keeps a daily check on this money and knows the amount of the same. When received, it is by him, and he is not required by law to account to either of the three officials. Suppose, for instance, that the resolution adopted by the board be treated as sufficient authority for him to invest the school funds in the State Highway Bonds. The other officials are occupied with a multiplicity of duties, which necessarily occupy much of their time. They do not keep in touch with the amount of money on hand, belonging to this fund, and might assume that a small amount is being invested by the Treasurer in the channel authorized. In the meantime, millions of dollars come into the Treasurer’s hands, which he, acting under the authority conferred by the three officials, and as required by their resolution, invests in the named securities, when it might never have been the intention of the three officials to authorize such an amount to be invested. Such was never the intention. Upon the Treasurer was placed the responsibility of keeping the fund invested and for so doing he would be held responsible under his bond, which he is required to execute as a guaranty of his conduct in that regard. He is the custodian of the fund and at all times is fully informed as to the daily receipts. He dare not permit it to lie idle without investment, and must present to the officials named a proposition to invest it, so often and as soon as he has on hands an amount justifying investment. The board should have at the time each investment is proposed, an opportunity of passing upon the advisability of the proposed investment'. The bond market, as is well known, is subject to fluctuation. Each proposed-purchase of bonds, were an individual buying, would be governed as to price, by the market value of such a security. Should we, by a strained construction, hold that the three officials, by a resolution, may authorize the Treasurer to act for an indefinite time in the purchase of securities, regardless of changing conditions of the market, such, I believe to be foreign to the purpose of Congress and the constitutional convention. Again, the resolution adopted by the three officials, and upon which this action of mandamus is predicated, reads as follows: “Resolved, that all of the bids received from the various banks for deposits of the Permanent School Fund be rejected for the purpose of investing said funds in the State Highway Bonds, the difference in the rate of interest received, which would be about four cents per annum per capita of school children as shown by the last enrollment, being so small as to be more than offset by the benefits to be derived from the construction of highways to the schools themselves as well as to all other interests.” - Which may be considered as supplemental by the following extract from a letter sent by the three officials to the State Treasurer: “Therefore, we now say to you that, under existing circumstances, we approve of the investment of this fund in the State Highway Bonds, and that we will not approve of its investment in any other securities at this time.” If mandamus will lie, it must be that the Treasurer lias no discretion in the matter of the investment, and mu°t blindly follow the direction contained in the above resolution. That is, he must invest these funds in the State Highway Bonds, regardless of the price which he might be compelled to pay for the same. Suppose, for instance, that he should purchase these bonds at a premium of twenty-five cents on the dollar, could he justify under the above resolution or direction? Again, is the above direction sufficient warrant for his action, should he buy the bonds, and would he not be required to report to the three officials the price which he paid for the bonds ? If it is not sufficient warrant for his so acting, clearly mandamus would not lie to compel him to act. The question is as to who, the State Treasurer on the one hand, or the Governor, Secretary of State and Attorney General on the other, has the right to determine the particular form of investment in which these funds shall be placed. It seems to me that the answer is plain, that neither has the right, but the form of investment must be concurred in by the four officials named, and any one of the four has the power to prevent any particular form of investment. I concur in the denial of the writ.